**WHOLE COURT**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**November 30, 2012**

# In the Court of Appeals of Georgia

A12A1275. IN THE INTEREST OF S. M. B

BARNES, Presiding Judge.

The father of S. M. B., appeals from the order of the juvenile court terminating his parental rights. He contends that the evidence was insufficient to show that the deprivation was likely to continue or would not be remedied, and that the lawyer who represented him at the termination hearing was ineffective. We are unable to reach the merits of this case, however, because we lack jurisdiction.

1. "It is the duty of this court to raise the question of its jurisdiction in all cases in which there may be any doubt as to the existence of such jurisdiction." (Citations and punctuation omitted.) *Rowland v. State*, 264 Ga. 872 (1) (452 SE2d 756) (1995).

Applications for discretionary appeal must be filed within 30 days of entry of the order to be appealed, and we have held that a party's failure to meet this statutory deadline deprives us of jurisdiction to consider the application. OCA § 5-6-35 (d), *Wilson v. Carver*, 252 Ga. App. 174 (555 SE2d 848) (2001), overruled in part on

other grounds in *Gable v. State*, 290 Ga. 80, 85 (720 SE2d 170) (2011). Moreover, we have also held that a trial court lacks authority to extend the time for filing a discretionary appeal. *Rosen stein v. Jenkins*, 166 Ga. App. 385 (304 SE2d 740) (1983), overruled in part on other grounds in *Gable v. State*, supra.

Here, the termination order was entered on August 16, 2011. The father filed a motion to set aside judgment on September 8, 2011. After a hearing, the motion was denied on November 2, 2011, nunc pro tunc to October 14, 2011. On October 31, 2011, the father filed a pro se motion in the juvenile court to vacate and re-enter the termination order so that he could file a timely application. As an attachment to his motion, the father included a letter from the firm appointed to represent him explaining the rationale for his motion. The letter noted that he had been appointed an appellate counsel, but that the transcript of the termination hearing had not been received until September 22, 2011. It further detailed that the attorneys had agreed that in order to provide the appellate counsel with more time to review, the trial counsel would file a motion to set aside to "toll the 30 day time limit for filing the Application for Discretionary Appeal to the Georgia Court of Appeals." The letter then explained that the motion to set aside did not extend time for filing the application and that the time to file the application had expired.

After a hearing, the court granted the motion and found that "the procedural deficiency on appeal was due to [the father's] counsel failing to file the application for discretionary appeal within the time required by OCGA § 5-6-35 (d)."[1] The court explained that it had construed the father's motion as a motion for an out-of-time appeal, and authorized him to file a discretionary application within 30 days. We granted the application, and instructed the parties to address the juvenile court's authority to grant an out-of-time discretionary appeal in a parental rights termination case in light of the Supreme Court's opinion in *Gable v. State*, supra.

In *Gable*, our Supreme Court considered whether a trial court has the authority to grant an out-of-time discretionary appeal in a criminal case as a remedy for counsel's failure to timely file a discretionary application.[2] The Court held that extensions of time may be granted for discretionary applications pursuant to OCGA

---

[1] The hearing transcript was not included with the record.

[2] Gable filed a pro se extraordinary motion for new trial which the court denied. He thereafter filed a notice of appeal, which this Court dismissed for failure to follow the discretionary appeal procedure required by OCGA § 5-6-35. Gable then filed a motion for an out-of-time discretionary appeal with the trial court, which the court granted on the ground that his counsel was ineffective in failing to file a timely application for discretionary appeal. Thereafter, Gable filed an application for discretionary appeal with this Court, and we dismissed the application as untimely after finding that the trial court did not have the authority to grant an out-of-time discretionary application. *Gable v. State*, 290 Ga. at 82 (1).

3

§ 5-6-39 (a) (5),but that the extension request must still be timely under OCGA § 5-6-39(d). Id at 84-85 (2) (a). The Court further held that "[b]ecause a discretionary application must be filed only in an appellate court, see OCGA § 5-6-35 (d), a trial court *may not* grant an extension of the time to file the application pursuant to OCGA § 5-6-39." Id. Thus, the authority to grant an extension of time to file a discretionary application is vested only in the appellate courts, and only if the motion for an extension is timely filed. Id. In this circumstance the trial court lacked jurisdiction to grant the father authority to file the application for review of the termination order beyond the statutory period.

The Court further explained that appellate courts are limited in their ability to grant extensions beyond statutorily prescribed times. Our Supreme Court held that

> courts have no authority to create equitable exceptions to jurisdictional requirements imposed by statute. Instead, Georgia courts may excuse compliance with a statutory requirement for appeal only where necessary to avoid or remedy a constitutional violation concerning the appeal.

*Gable v. State*, supra at 85 (2) (b). Thereby, an *appellate* court may*,* at its discretion, permit an out-of-time discretionary appeal where a constitutional right is at stake.

4

Although the dissent correlates the father's right to an out-of-time appeal on ineffectiveness grounds to that of a criminal defendant,

> [o]ut-of-time appeals are designed to address the constitutional concerns that arise when a criminal defendant is denied his first *appeal of right* because the counsel to which he was constitutionally entitled to assist him in that appeal was professionally deficient in not advising him to file a timely appeal and that deficiency caused prejudice. However, for an out-of-time appeal to be available on the grounds of ineffective assistance of counsel, the defendant must necessarily have had the right to file a direct appeal.

(Citation and footnote omitted; emphasis supplied.) *Stephens v. State*, ___ Ga.___, (S12A1226, decided October 15, 2012). The father did not have the right to file a direct appeal in this case, and so no out-of-time appeal is available on ineffective assistance grounds.

Here, the father's motion to vacate, which the trial court interpreted as a motion for an out-of-time appeal, was not filed within 30 days of the August 16, 2011 order terminating his parental rights. The father had no right of direct appeal of the order, and any challenge to the termination order was required to be through application for appellate review pursuant to OCGA § 5-6-35 (a) (12). Further, the trial

5

court had no right to grant an extension of time to file an application to appeal, which had to be filed in this court within 30 days of the order.

Although the father contends that this is an issue of "constitutional significance" because trial counsel deprived him of his right of first appeal, the father did not have a constitutional right to such an appeal.[3] While our Courts have recognized the fundamental nature of parental rights, particularly in regard to the right to appointed counsel during termination proceedings, see *In the Interest of J. M. B.*, 296 Ga. App. 786 (676 SE2d 9) (2009),

> if a full and fair trial on the merits is provided, the Due Process Clause of the Fourteenth Amendment does not require a State to provide appellate review, even in termination of parental rights cases. Indeed,

---

[3] While the father has the right to seek a discretionary appeal, this Court's Rule 31 (a) establishes that an application for leave to appeal cases subject to appeal under OCGA § 5-6-35 will be granted only when there appears to be reversible error or to establish precedent. At the time of the termination hearing, the father had not seen the child for approximately seven years, had been incarcerated half of the child's life and was not expected to be released until 2014, had a history of violence towards the mother and S. M. B., had threatened in the past to kill himself and the child, had provided no financial support for the child since 2007, and had not established a parental bond with the child. Under these circumstances it is extremely unlikely that the trial court committed reversible error in terminating the father's parental rights, and thus providing no basis for the grant of an application for discretionary appeal. See OCGA § 15-11-94 (in terminating parental rights court must determine there is clear and convincing evidence of parental misconduct or inability).

6

there is no right to appeal granted by either the State or Federal Constitutions to civil litigants.

(Citations and punctuation omitted.) *In re N. A. U. E.*, 287 Ga. 797 (700 SE2d 393) (2010).[4]

Thus, as the trial court had no authority to grant the father an out-of-time discretionary application from the termination of his parental rights, the father's application is dismissed. Cf. *Crosson v. Conway*, 291 Ga. 220, 220-221 (728 SE2d 617) (2012) (where no constitutional right of appeal or of counsel is implicated, the Court is without authority to waive compliance with OCGA § 5-6-35 after failure to meet statutory deadline for discretionary appeal of habeas petition.)

*Appeal dismissed. Miller, P. J., Doyle, P. J., Ray, and Branch, JJ., concur. Adams and McFadden, JJ., dissent.*

---

[4] Although the dissent would permit Georgia courts to excuse compliance with the time requirement for filing a discretionary appeal under OCGA § 5-6-35 (d) in termination cases, our Supreme Court has held that courts are not at liberty "to ignore jurisdictional and procedural statutes and rules, and to change its role from disinterested decision-maker to . . . advocate." *Rowland v. State*, 264 Ga. at 874 (1).

A12A1275. IN THE INTEREST OF S. M. B.

MCFADDEN, Judge, Dissenting.

I would hold that Georgia courts have the authority to grant permission to file out-of-time discretionary applications to appeal from orders terminating parental rights. I therefore respectfully dissent.

I agree with the majority that, to the extent the father sought an extension of time, under OCGA § 5-6-39, to file his discretionary application, his request was ineffective, because it was neither timely filed nor filed in the appellate court. *Gable v. State*, 290 Ga. 81, 85 (2) (a) (720 SE2d 170) (2011). But the trial court treated his request as for an out-of-time appeal and granted that relief. I would uphold the trial court's decision to grant that relief and hold that the grant of such relief entitles a parent to pursue a motion for new trial and all other remedies normally available after the entry of an order terminating parental rights. See *Ponder v. State*, 260 Ga. 840, 841 (1) (400 SE2d 922) (1991) (the grant of an out-of-time appeal "should be seen as permission to pursue the post-conviction remedies which would be available at the same time as a direct appeal").

"[W]resting a child away from the care and custody of its parents is . . . so drastic that it should be attended only by the most stringent procedural safeguards." *Sanchez v. Walker County Dept. of Family & Children Svcs.*, 237 Ga. 406, 411 (229 SE2d 66) (1976). "The General Assembly wisely acknowledged the serious and often devastating consequences involved in terminating parental rights when it adopted the Juvenile Code . . . [which] provides that a parent is entitled to have counsel appointed to represent that parent in the proceeding if counsel cannot be employed without undue financial hardship." *Nix v. Dept. of Human Resources*, 236 Ga. 794, 795 (225 SE2d 306) (1976). We have repeatedly emphasized that state intervention to terminate the relationship between a parent and child implicates fundamental liberty interests, that the procedures the state employs in an action to terminate those rights must reflect their fundamental importance, and that parents facing termination are therefore afforded some of the protections afforded criminal defendants:

> [N]o judicial determination has more drastic significance than permanently severing a parent-child relationship. The United States Supreme Court has held that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment and that state intervention to terminate the relationship between a parent and child must consequently be accompanied by procedures meeting the requisites of the due-process clause. As a result,

2

trial courts apply a heightened standard of proof, the clear and convincing evidence standard, and a parent facing termination of parental rights is afforded some of the protections to which criminal defendants are entitled.

(Citations and punctuation omitted.) *In the Interest of A. R. A. S.*, 278 Ga. App. 608, 609 (629 SE2d 822) (2006). Among the protections to which criminal defendants are constitutionally entitled, and which parents facing termination are afforded by statute, is the right to effective assistance of counsel. Id. An established corollary of that right, for criminal defendants, is the remedy of an out-of-time appeal.

It is true, as the majority holds, that "[n]o state or federal constitutional right to counsel is involved because a parental termination action is a civil matter, not a criminal proceeding." (Citations omitted) *In the Interest of A. M. R.*, 230 Ga. App. 133, 136 (2) (495 SE2d 615) (1998). See also *Lassiter v. Dept. of Social Svcs.*, 452 U. S. 18 (101 SC 2153, 68 LE2d 640) (1981) (United States Constitution does not require the appointment of counsel for indigent parents in every proceeding for the termination of parental rights).

Nevertheless it is a violation of a parent's right to due process of law to dismiss an application to appeal the state's termination of parental rights because of ineffective assistance of counsel. See *Santosky v. Kramer*, 455 U. S. 745, 753 (II)

3

(102 SC 1388, 71 LE2d 599) (1982) (imposing a "clear and convincing evidence" standard of proof in proceedings to terminate parental rights because "state intervention to terminate the relationship between a parent and the child must be accomplished by procedures meeting the requisites of the Due Process Clause") (citations omitted); *Rowland v. State*, 264 Ga. 872, 873 (1) (452 SE2d 756) (1995) ("[A] state court's dismissal of a criminal defendant's appeal of right due to the ineffective assistance of appellate counsel may violate the defendant's right to due process of law" but is remedied by granting out-of-time appeal).

In order "to avoid . . . [this] constitutional violation concerning the appeal," *Gable*, 290 Ga. at 85 (2) (b), I would hold that Georgia courts may excuse compliance with OCGA § 5-6-35 (d)'s time requirement by granting permission to file out-of-time discretionary applications to challenge orders terminating parental rights.

Citing *Gable,* the majority limits this authority to appellate courts. But *Gable* does not so hold. It is true – as to extensions of time to file applications for discretionary appeal – that *Gable* limits the authority to grant that remedy to the appellate courts. But as to out-of time appeals, *Gable* holds, "*Georgia courts* may excuse compliance with a statutory requirement for appeal . . . where necessary to avoid or remedy a constitutional violation concerning the appeal." (Emphasis

4

supplied.) *Gable*, 290 Ga. at 85 (2) (b). Similarly, the majority's decision to confine the remedy of out-of-time appeals to cases subject to direct appeal is in conflict with our Supreme Court's decision in *Gable.*

Nor is the majority view supported by our Supreme Court's decision in *Stephens v. State*, __ Ga. __ (__ SE2d __) (Case No. S12A1226, decided Oct. 15, 2012). It is true that *Stephens* identifies as a precondition to an out-of-time appeal that the would-be appellant "must necessarily have had the right to file a direct appeal." Id. at __ (2). But that reference to a "direct" appeal is descriptive rather than limiting. William Stephens sought to appeal, nine years after the fact, from his conviction on a plea. The threshold question before our Supreme Court was "whether the issues that [Stephens] raised in his motion for out-of-time appeal and has pursued in this appeal can be determined on the existing record," id., because "if the issues that a defendant who pled guilty seeks to appeal cannot be resolved using the existing record, he would have had no right to file even a timely appeal and therefore is also not entitled to an out-of-time appeal." Id. at __ (3).

When the General Assembly enacted OCGA § 5-6-35 (a) (12), which changed the procedure for appeals from orders terminating parental rights from direct to

5

discretionary, its purpose was not to degrade the appellate review afforded parents facing termination. Rather it was to advance the state's

> legitimate interest in not permitting children determined to be deprived to languish in temporary care, but instead, to leave this situation for permanent stable homes as expeditiously as possible. The discretionary appeal process provided in OCGA § 5-6-35 (a) (12) helps accomplish this goal by offering effective appellate review in an expedited manner, yet permitting a full appeal of the termination of parental rights if that is shown to be warranted.

(Citation omitted) *In re A. C.*, 285 Ga. 829, 834 (2) (686 SE2d 635) (2009) (rejecting the argument of a father facing termination that OCGA § 5-6-35 (a) (12) "denies him due process, and is violative of equal protection").

I am authorized to state that Judge Adams joins in this dissent.