**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 6, 2013**

# In the Court of Appeals of Georgia

A13A1553. IN THE INTEREST OF A. M. et al.

BARNES, Presiding Judge.

We granted the parents' application for discretionary review of the juvenile court's order denying their motion pursuant to OCGA § 15-11-40 to modify or vacate the order terminating their parental rights to their five minor children, A. M., A. M., D. M., E. M., and M. M, based on newly discovered evidence and changed circumstances. On appeal, the parents contend that their trial counsel was ineffective and the trial court failed to consider changes to the parents' circumstances and newly discovered evidence. They also raise issues regarding the termination itself. Upon our review, we affirm.

1. We note at the outset that, although the parents filed an application for discretionary review, the juvenile court's order denying their motion seeking

modification under OCGA § 15-11-40 was a final judgment and thus directly appealable under OCGA §§ 5-6-34 (a) (1) and 15-11-3. See *In the Interest of J. N. F.*, 306 Ga. App. 313, n. 1(701 SE2d 925) (2010); *In the Interest of J. L. K.*, 302 Ga. App. 844, 846-847 (1) (691 SE2d 892) (2010); *In the Interest of J. N.*, 302 Ga. App. 631, 632-634 (1) (691 SE2d 396) (2010). Accordingly, when, as here, a party files a discretionary application when an order may be appealed directly, we grant the application under OCGA § 5-6-35 (j). [1]

2. This court previously vacated and remanded a November 2009 order by the juvenile court granting the motion of the Department of Family and Children Services ("the Department") to cease family reunification efforts involving these parents and children. *In the Interest of A. M.*, 306 Ga. App. 358 (702 SE2d 686) (2010). We determined in that opinion that, according to the evidence presented, the four oldest children, who were all younger than four years, were placed in shelter care in July 2008 after being referred to the Department based on health concerns, including

---

[1] OCGA § 5-6-35 (j) provides, in relevant part, that "[w]hen an appeal in a case enumerated in subsection (a) of Code Section 5-6-34, but not in subsection (a) of this Code section, is initiated by filing an otherwise timely application for permission to appeal pursuant to subsection (b) of this Code section without also filing a timely notice of appeal, the appellate court shall have jurisdiction to decide the case and shall grant the application."

malnutrition. Id. at 359. In September 2008, the juvenile court found that the children were deprived, based on their medical conditions. The fifth child, who was born in November 2008, was placed with the Department shortly after birth and found to be deprived in December 2008. Because neither deprivation order was appealed, the parents are bound by the juvenile court's finding that the children were deprived at that time. *In the Interest of C. J.*, 279 Ga. App. 213, 216 (1) (630 SE2d 836) (2006).

The juvenile court gave the Department legal custody for one year from the date they were removed from their parents, and in January 2009 the juvenile court entered an order incorporating case plans for all five children. In June 2009, the Department moved to extend custody and sought permission to cease its efforts to reunify the family. During the hearing on the non-reunification motion, the case manager testified about the children's medical conditions. *In the Interest of A. M.*, 306 Ga. App. at 359. For example, the twins have facial deformities and had frequent bouts of pneumonia and chest infections; one twin required a feeding tube and had seizures; two of the other children required feeding tubes because they could not swallow; and the youngest child had a brain shunt that required monitoring. Id. While the parents had met some of their case plan goals, the case manager thought they did not understand the children's medical needs well enough to have unsupervised visits.

3

Id. A contractor who provided "hands-on directional parenting" services working one-on-one with the parents testified that she thought the parents were unable to meet the demands of the children's extreme special needs, and gave examples of why she thought so. Id. The foster mother described certain instances in which the parents' behavior disturbed her, and the psychological evaluation contains a finding that the parents had little understanding about the care the children required. Id. at 360.

In our opinion issued on October 6, 2010, this court determined that clear and convincing evidence supported the juvenile court's conclusion that reunification efforts would be detrimental to the children, because the parents were unable to meet their children's medical needs and the children's lives would be endangered without the appropriate level of medical care. *In the Interest of A. M.*, 306 Ga. App. at 360 (2). We also found, however, that no evidence supported the juvenile court's finding that the parents had "a medically verifiable deficiency of their mental health such as to render them incapable of providing adequately for the physical needs of the children," which would also be a ground for terminating their parental rights. Id. at 362-364 (5). Therefore, the order granting the Department's motion for nonreunification was vacated, the case was remanded to the juvenile court with direction to review and

4

reissue its order consistent with its findings, and the parents were authorized to appeal the new ruling within 30 days. Id. at 365.

Upon review of the case, the juvenile court issued a modified order on October 15, 2009, based on the evidence previously considered and this court's direction, again granting the Department's motion to cease reunification services. The parents did not appeal that order. In December 2009 and again in September 2010, the Department petitioned the juvenile court to terminate the parents' rights to the children based on their inability to meet the children's extreme special needs. In November 2010, the Department filed an amended deprivation petition, and in February 2011, the juvenile court issued a judicial review order finding that the children should continue in their current placements.

Finally, on June 10, 2011, the juvenile court issued an order terminating the parents' parental rights, finding that they would never be able to meet their children's special needs. The court found that the children had a combined total of 75(seventy five) medical appointments each month, that their care required three adults working full-time and a fourth adult part-time, and that the parents had no concrete plan to meet the children's daily needs. The juvenile court noted that the children needed

5

stability and permanence, and that the foster parents intended to adopt all five children if the termination petitions were granted. That order was not timely appealed.

Four months later, on October 12, 2011, the Department petitioned the court to review the adoption efforts for the children, who were doing well in adoptive placement as the Department awaited approval for adoption assistance. On October 14, 2011, the juvenile court appointed a guardian ad litem to represent the children and scheduled a hearing for November 2, 2011. That same day, the parents filed a motion for new trial and a motion for reconsideration, which the Department moved the court to dismiss. In December 2011, the parents filed an amended motion to modify or vacate the termination order based on newly discovered evidence and changed circumstances. The juvenile court conducted a hearing in February 2012 and issued an order denying the parents' motion to modify the termination order, which is the order now on appeal.

Regarding the parents' challenge to the termination order, the juvenile court has continuing jurisdiction over its orders and can subsequently modify or vacate them. OCGA 15-11-40 (b); *In the Interest of B. S. H.*, 236 Ga. App 879, 880-881 (514 SE2d 879) (1999), overruled in part on other grounds by *In the Interest of J. N.*, 302 Ga. App. at 634 (1). However, "[a] motion under [OCGA § 15-11-40] . . . is not one

of the three types of motions which will automatically extend the time for filing a notice of appeal on the underlying judgment." *In the Interest of H.A.M.*, 201 Ga. App. 49, 50 (410 SE2d 319) (1991). And even motions that extend the time of appeal must be filed before the 30-day limit has passed, and in this case the parents filed their motion long after the time to appeal had passed. OCGA § 5-6-38 (8 (a). Thus, in this case, "we may only consider the correctness of the order denying the motion to modify and vacate the underlying judgment, but not the merits of that judgment." Id. at 50. With that being so, we cannot consider the merits of the June 10, 2011 order terminating the parents' parental rights because the parents neither timely appealed that order nor filed a motion within 30 days that would extend the time to appeal.[2]

3. The parents contend that in denying their motion to modify or vacate the termination order, the juvenile court failed to consider newly discovered evidence and significant changes in the parents' circumstances which had occurred subsequent to the termination hearing. They maintain that evidence of several offers of assistance

---

[2]We recognize that "[t]here is no judicial determination which has more drastic significance than that of permanently severing a natural parent-child relationship. It must be scrutinized deliberately and exercised most cautiously." *McCormick v. Dept. of Human Resources*, 161 Ga. App. 163, 164 (288 SE2d 120) (1983). However, due to the procedural posture of this case we cannot reach the merits of the termination order itself.

from organizations to help them gain legal residency status and to help them care for their children was evidence of both changed circumstances and newly discovered evidence that would affect their ability to attain certain case goals.

"An order of the court shall be set aside if [] . . . [n]ewly discovered evidence so requires." OCGA § 15-11-40 (a) (3).[3] Furthermore, "[a]n order of the court may also be changed, modified, or vacated on the ground that changed circumstances so require in the best interest of the child." OCGA § 15-11-40 (b). The parents had the burden to prove by a preponderance of the evidence that newly discovered evidence or changed circumstances merit modification considering the best interest of the children pursuant to OCGA § 15-11-40. *In the Interest of J. N.*, 302 Ga. App. at 636-637. "We review a juvenile court's ruling on whether the movant met his or her burden only for an abuse of discretion. There can be no abuse of discretion if there was any evidence to support the ruling of the juvenile court." (Citations omitted.) *In the Interest of J. N. F.,* 306 Ga. App. at 315.

At the hearing on the motion to modify or vacate the termination order, a diplomat from the parents' native country testified that the Consulate was coordinating efforts to support the family, including efforts to expedite the parents'

---

[3] Effective until January 1, 2014. Ga. L. 2013, p. 294, § 1/HB 242.

application process for legal residency status, and had acquired letters of support from other organizations. However, he also admitted that the Consulate had "provided support to the . . . family since the beginning of this case" and had paid for legal services for the family since 2009.

As noted above, we must affirm the juvenile court's ruling absent an abuse of discretion. *In the Interest of J. N. F.*, 306 Ga. App. at 315. In its order denying the motion, the juvenile court pointed out that evidence about the parents' residency status had been admitted at the termination hearing and was neither "newly discovered" nor a "change in circumstances that establishe[d] that it would be in the best interest of the children to change, modify, or vacate the order of termination" as required by OCGA § 15-11-40. The court further found that the father's eligibility for legal residency status did not change the fact that termination of parental rights was appropriate because of the children's "extreme special needs which require extra-ordinary, specialized care, and . . . the parents' low levels of functioning."

Given that there was evidence to support the juvenile court's ruling, we cannot find that the court abused its discretion.

4. The parents also contend that a language barrier existed at the time of the termination hearing and during critical times in their case, including their two

psychological evaluations, because they did not have a translator who spoke their Guatemalan dialect of Mam. However, the testimony at the hearing on their motion demonstrated that the couple had always used a Spanish interpreter and had never complained about the interpreter's services, expressed any confusion to the court, or requested an interpreter who spoke the Mam dialect. Further, in their previous appeal of the juvenile court's November 2009 non-reunification order, the parents asserted only that the Department should have provided them with a Spanish-speaking parental aide, not that the Department should have provided them with a Mam-speaking parental aide. This court held that the Department did not fail to meet its duties under the case plan. *In the Interest of A. M.*, 306 Ga. App. 362 (4). Thus, the juvenile court did not abuse its discretion in denying the parents' motion to modify or set aside the termination order on this ground.

5. Although the parents also complain that their trial counsel was ineffective at the termination hearing, that certain psychological examinations supporting the termination were not included in the record, and that the evidence was insufficient to support the termination, as noted in Division 2, we may only consider the correctness of the order denying the motion to modify or vacate the underlying judgment, not the merits of that judgment.

That the parents maintain an ineffectiveness ground for their trial counsel's failure to pursue the appeal of their termination order does not demand a different result. In raising such a claim, the parents are essentially requesting that the juvenile court grant them an out-of-time appeal of the underlying termination order. In *In the Interest of S. M. B.*, 319 Ga. App. 125 (735 SE2d 122) (2012), the father made a similar claim and we held that the juvenile court did not have jurisdiction to grant the father an extension of time to appeal his termination order. We held that,

> for an out-of-time appeal to be available on the grounds of ineffective assistance of counsel, the defendant must necessarily have had the right to file a direct appeal. The father did not have the right to file a direct appeal in this case, and so no out-of-time appeal is available on ineffective assistance grounds.

(Citation omitted.) Id. at 127.

*Judgment affirmed. Miller and Ray, JJ., concur.*