**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 17, 2014**

# In the Court of Appeals of Georgia

A14A1420. IN THE INTEREST OF T. M.

MILLER, Judge.

Following a hearing, the juvenile court terminated the mother's parental rights with respect to her daughter, T. M.[1] We granted the mother's application for discretionary review, and she appeals the juvenile court's order. On appeal, the mother contends that the evidence was insufficient to support the termination of her parental rights; the trial court denied her right to counsel at all stages of the proceedings; and the trial court erred in denying her motion for new trial. After a thorough review, this Court finds that the clear and convincing evidence does not show that the mother is presently unfit and that T. M's deprivation was likely to

---

[1] The parental rights of the putative father were also terminated, but that is not an issue in this appeal.

continue and cause substantial harm. Accordingly, we reverse the juvenile court's decision.

> In considering the mother's appeal, we view the evidence in the light most favorable to the juvenile court's disposition and determine whether any rational trier of fact could have found by clear and convincing evidence that the mother's right to custody should have been terminated.

(Citation omitted.) *In the Interest of A. B.*, 311 Ga. App. 629 (716 SE2d 755) (2011). Nevertheless, in conducting our review, we must proceed

> with the knowledge that there is no judicial determination which has more drastic significance than that of permanently severing a natural parent-child relationship. It must be scrutinized deliberately and exercised most cautiously. The right to raise one's children is a fiercely guarded right in our society and law, and a right that should be infringed upon only under the most compelling circumstances.

(Citations and punctuation omitted.) *In the Interest of C. J. V.*, 323 Ga. App. 283 (746 SE2d 783) (2013). Moreover, *clear and convincing evidence of present or current parental unfitness*, as opposed to past unfitness, is required to terminate a mother's rights to her natural child. *In the Interest of T. F.*, 250 Ga. App. 96, 98 (1) (550 SE2d 473) (2003).

2

So viewed, the evidence shows that the mother faced numerous difficulties over her lifetime.[2] In March 2011, while she was pregnant with T. M., the then 18-year-old mother was admitted to the hospital for overdosing on ibuprofen pills. The mother denied intending to cause T. M. harm, and she was released from the hospital after three days with instructions for follow-up psychiatric treatment.

As a result of the mother's overdose, the Department of Family and Child Services ("DFCS") became involved in the mother's case. Thereafter, on June 5, 2011, the mother gave birth to T. M. prematurely. On June 16, 2011, while T. M. remained hospitalized, DFCS filed a petition for custody of T. M., alleging that she was deprived. Following a shelter care hearing on June 20, 2011, the juvenile court granted temporary custody of T. M. to DFCS. The juvenile court subsequently found T. M. to be deprived and extended the grant of temporary custody to DFCS through June 16, 2013.

---

[2] The mother has a history of mental health symptoms, including depression, bipolar disorder and schizophrenia. At age 11 or 12, the mother was molested by a stranger, removed from her mother's custody and placed in a group home followed by a foster home. At age 17, the mother went back to live with her mother and was subjected to physical abuse.

The juvenile court's deprivation orders provided for a permanency plan of reunification with the mother concurrent with the termination of parental rights and adoption. The reunification plan required the mother to, among other things, obtain and maintain a source of income and suitable housing; successfully complete a psychological and psychiatric evaluation and follow the recommendations thereof; successfully complete parenting classes; and take all of her prescribed medications.

The mother made substantial improvements as demonstrated by her actions in completing her parenting classes, meeting with her caseworkers, obtaining Social Security Income ("SSI") for her mental illness disability, seeking part-time employment to supplement her SSI income,[3] and applying for housing assistance. The mother also attended most of her scheduled supervised visitations with T. M., interacted well with T. M. during visitation and has custody of her youngest child.[4]

After the mother completed her parenting classes, DFCS did not require her to attend any additional classes or refer her to a follow-up family service worker. Nevertheless, in February 2013, despite the mother's efforts to complete her

[3] The mother worked part-time at two jobs for three to four months in 2012.

[4] The mother has two younger children who were born in June 2012 and June 2013. The mother's second child is being raised by that child's father.

4

reunification plan goals and turn her life around, DFCS filed a petition to terminate the mother's parental rights to T. M. The petition alleged that the mother failed to maintain stable housing and income, failed to comply with her established mental health treatment plan and failed to regularly visit and bond with T. M.

The actual evidence presented at the termination hearing showed that the mother had stable housing and sources of income. The mother had been living at the same two-bedroom residence with her youngest child and that child's father for more than five months,[5] and the youngest child's father was employed. The mother and her youngest child's father had been dating for about one year, they had obtained a marriage license and were planning to marry, and the mother had taken the father's last name.[6]

An expert psychologist, who testified at the termination hearing, opined that the mother's history of foster care and abuse, her history of fighting and non-compliance with prescribed medications and her authoritarian views on parenting increased the risk of physical abuse for a child in her care. The expert admitted,

---

[5] The mother lived in Florida with her mother for about four months in an effort to establish stable housing there, but moved back to Georgia in January 2013 because she was missing visits with T. M.

[6] The mother has since married the father of her youngest child.

however, that parenting classes could address this issue. Moreover, the psychologist opined that the mother's mental health would likely improve with proper intervention, including medications and counseling, and compliance with her recommended mental health treatment.

1. The mother contends that the evidence was insufficient to support the termination of her parental rights. We agree because we find that clear and convincing evidence does not show that the mother is presently unfit and that T. M.'s deprivation was likely to continue and cause her harm.

A juvenile court's termination of parental rights is a two-step process:

The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.

(Footnotes omitted.) *In the Interest of T. F.*, supra, 250 Ga. App. at 98 (1); see also

former OCGA § 15-11-94 (a), (b) (4) (A) (i)-(iv).[7] Moreover, where as here, the child

is not in the parent's custody the juvenile court shall consider

> whether the parent without justifiable cause has failed significantly for
> a period of one year or longer prior to the filing of the petition for
> termination of parental rights: (i) To develop and maintain a parental
> bond with the child in a meaningful, supportive manner; (ii) To provide
> for the care and support of the child as required by law or judicial
> decree; and (iii) To comply with a court ordered plan designed to reunite
> the child with the parent[.]

(Citation omitted). *In re C. J. V.*, supra, 323 Ga. App. at 284; see also OCGA §

15-11-94 (b) (4) (C). DFCS had the burden of proof in this case. *In the Interest of M.*

*J. T.*, 255 Ga. App. 553 (565 SE2d 877) (2002).

(a) *Whether the cause of the deprivation was likely to continue.*

For purposes of our review, we assume that the evidence was sufficient to show

that T. M. was deprived since the mother did not appeal that determination.

Accordingly, we focus our analysis on whether the evidence clearly and convincingly

---

[7] In 2013, the General Assembly adopted a new Juvenile Code to replace Chapter 11 of Title 15 of the Georgia Code. Ga. L. 2013, p. 294, § 1-1. The new Juvenile Code became effective on January 1, 2014, and applies to all juvenile proceedings commenced on and after such date. Ga. L. 2013, p. 294, § 5-1.

showed that T. M.'s deprivation was likely to continue because that issue is dispositive of our inquiry here. *In re C. J. V.*, supra, 323 Ga. App. at 284.

As set forth above, "termination of parental rights is a remedy of last resort and can be sustained only when there is clear and convincing evidence that the cause of the deprivation is likely to continue. In the instant case, the evidence is not clear and convincing, at least at this time, that the deprivation is likely to continue." (Citations and punctuation omitted.) *In the Interest of C. S.*, 319 Ga. App. 139, 148 (1) (735 SE2d 140) (2012); see also *In the Interest of C. J. V.*, supra, 323 Ga. App. at 285-288 (reversing termination of mother's rights where she made substantial steps toward complying with case plan).[8] Although the juvenile court was authorized to consider the mother's past conduct,[9] evidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent and her natural child. See *In the Interest of T. F.*, supra, 250 Ga. App. at 98 (1). Rather, clear and convincing evidence of present unfitness is required. Id.

---

[8] Compare *In the Interest of A. M.*, 324 Ga. App. 512 (751 SE2d 144) (2013) (affirming termination of parents' rights where they were unable to meet children's extreme special needs).

[9] See *In the Interest of D. B.*, 306 Ga. App. 129, 137 (1) (701 SE2d 588) (2010).

Here, the juvenile court's findings with regard to whether T. M.'s deprivation is likely to continue were limited to the mother's failure to maintain stable housing, take her medications and remain employed. Even construing the evidence in the light most favorable to the termination order, the evidence does not clearly and convincingly show that the mother is presently unfit and that T. M.'s deprivation is likely to continue.

The mother has maintained stable housing with her youngest child and that child's father. As for employment, the mother's reunification plans required her to obtain and maintain a source of income or support, not stable employment. The mother has sources of income, including her SSI benefits, as well as income from her youngest child's father, and she has supplemented her income with money earned from part-time employment.

The mother also met or substantially completed most of her other case plan goals. She completed her parenting classes, attended counseling sessions, attended the majority of her scheduled visitations with T. M., interacted well with T. M. during visitation, and met with her caseworkers. This evidence clearly contradicts the juvenile court's findings in its termination order that the mother has never had stable housing, that the only thing consistent in her life is her Social Security benefits and

9

that she failed to present any evidence showing that T. M.'s deprivation was not likely to continue.

Moreover, we note that shortly after the juvenile court entered its termination order, DFCS dismissed a deprivation petition involving the mother's youngest child based on evidence that the mother had resumed her medications,[10] and was adequately providing for that child. The dismissal order provides further evidence that the mother has maintained stable housing with her youngest child's father, she has complied with her recommended counseling, and her youngest child's father has sufficient income to support the family. Accordingly, the evidence does not show by the clear and convincing standard that the mother is presently unfit and that T.M.'s past deprivation is likely to continue. For this reason, we reverse the juvenile court's judgment terminating the mother's parental rights.

(b) *Likelihood of harm and best interest of the child.*

In light of our holding in Division 1 (a) above, we need not determine whether T. M.'s deprivation is likely to cause serious physical, mental, emotional, or moral

---

[10] At the time of T. M.'s birth, the mother had been prescribed psychotropic medications, but had not been taking the medications for more than a year. The mother also stopped taking her prescribed medications while she was pregnant with her younger children. The evidence showed that at least one of the psychotropic medications prescribed to the mother was contraindicated in pregnancy.

harm or whether termination of her mother's rights was in her best interest. Nevertheless, we note that the juvenile court found that T. M. was at risk of harm due to the mother's unstable lifestyle,[11] serious harm was likely to result if T. M. remained in temporary foster care for a substantial amount of time, her foster parents desired to adopt her and adoption was in her best interest. Approximately one week later, however, the juvenile court amended its termination order to state that T. M.'s foster home is not a potential adoptive resource. Accordingly, at this time, the evidence does not clearly and convincingly show that termination of the mother's parental rights is in T. M.'s best interest. See *In the Interest of T. Z. L.*, 325 Ga. App. 84, 96 (751 SE2d 854) (2013) (reversing termination of incarcerated father's parental rights where no evidence showed that foster parent stood ready and willing to adopt child).

2. In light of our holding that the evidence did not clearly and convincingly establish that T. M.'s deprivation was likely to continue and cause her harm, we reverse the juvenile court's judgment. Accordingly, we need not address the mother's remaining contentions.

---

[11] The juvenile court noted the psychologist's opinion that the mother's history increased the risk of child abuse for a child in her care, but made no additional factual findings regarding the psychologist's testimony that parenting classes could address this issue, or her testimony that the mother's mental health would likely improve with proper intervention.

*Judgment reversed. Doyle, P. J., and Dillard, J., concur.*